IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Donna Farmer, *et al.*, | : | Case No. 1:04-CV-080 |
| | : | |
| Plaintiffs, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART |
| | : | AND DENYING IN PART THE CITY |
| City of Cincinnati, *et al.,* | : | OF CINCINNATI'S MOTION TO |
| | : | DISMISS |
| Defendants. | : | |
| | : | |

This matter comes before the Court on Defendant City of Cincinnati's Motion to Dismiss Second Amended Complaint (doc. 43) and the Court's Order Granting Motions to Dismiss and Ordering Additional Briefing on Motion to Dismiss ("Dismissal Order") (doc. 68).

I.  BACKGROUND

This suit arises from the closure of Huntington Meadows, formerly the City of Cincinnati's ("City") largest affordable housing complex, the eviction of the tenants therefrom, and plans to redevelop the property as single-family housing. Plaintiffs Donna Farmer, Juanita Mitchell, Jackie Gaines, and Annie Davis (collectively, the "Individual Plaintiffs") are former residents of Huntington Meadows. Plaintiff Budget Real Estate ("Budget R.E.") is a private entity that sought to purchase Huntington Meadows after it was foreclosed upon with the intent to maintain the property as low-income housing. Plaintiffs' allegations and the procedural history of this action were set forth in detail in the Dismissal Order and are incorporated herein as if fully restated.

In the Dismissal Order, the Court dismissed the allegations against two original defendants, Allen Temple-Tryed Stone Development, Ltd. ("ATTSD") and RCM Cincinnati

Estate LLC ("RCM"). The Court also ordered additional briefing by the City and Plaintiffs on the City's dismissal motion as to recent judicial pronouncements on the Rooker-Feldman doctrine as applied to this case in light of the prior state court proceedings. Briefing is now complete.

## II. ANALYSIS

The legal standards for resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b) were set forth in the Dismissal Order and are incorporated herein as if fully restated.

### A. *Rooker-Feldman* and Preclusion

The City contends that the Court lacks jurisdiction over the claims against it pursuant to the Rooker-Feldman doctrine. The Rooker-Feldman doctrine takes its name from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), through which the Supreme Court instructed that federal district courts lack subject-matter jurisdiction to review and reverse unfavorable state court judgments. Exxon Mobile Corp. v. Saudi Basic Industs. Corp., 544 U.S. 280, 283 (2005). The Supreme Court recently endeavored to clarify the contours of the Rooker-Feldman doctrine and held that it is "confined to cases . . . brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. The Supreme Court also stated that a district court is not precluded "from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Id. at 293. Where jurisdiction otherwise exists in such cases, "state law determines

whether the defendant prevails under principles of preclusion." Id.

The Court first must determine if Plaintiffs were "state court losers" in the state foreclosure suit. The Plaintiffs' claims are not barred by the Rooker-Feldman doctrine if they were not "state court losers." The Sixth Circuit has interpreted the "state court losers" language broadly to include not only the state court losing party, but also those in privity with the state court losing party. See McCormick v. Braverman, 451 F.3d 382, 396 (6th Cir. 2006). Budget R.E. was not a party, nor was it a privity to a party, in the state court action. Plaintiff Mitchell and the Huntington Meadows Tenants Association ("Tenants Association") were intervening parties in the foreclosure action. See Federal Natl. Mortg. Assoc. v.. Huntington Meadows Ltd., No. A0103458 (Hamilton Cty. Ohio C.P.). Plaintiff Mitchell and the Tenants Association signed the Agreed Order terminating the tenant leases at Huntington Meadows and authorizing the voluntary relocation package offers. Id., slip op. (Hamilton Cty. Ohio C.P. July 31, 2002).

The City's argument on Rooker-Feldman is based on an assumption that the Huntington Meadows tenants, including Plaintiffs Farmer, Gaines, and Davis, were in privity with the Tenants Association. The City presents no legal arguments regarding the contours of the privity doctrine in Ohio or the Sixth Circuit to support that position. The limited evidence presented indicates that only a small portion of the tenants at Huntington Meadows actively participated in the Tenants Association and/or the lawsuit enacted on its behalf. In fact, the Legal Aid Society contract to represent the Tenants Association is signed by only five individuals, including Plaintiff Mitchell, but not Plaintiffs Farmer, Gaines or Davis. The Tenants Association state court filing quoted by the City states that only approximately 100 tenants attended its meetings. As such, the Court has no basis to conclude that Plaintiffs Farmer, Gaines, or Davis were parties

or privities to parties in the state foreclosure action. The Court cannot dismiss the claims of Budget R.E., Farmer, Gaines, or Davis based on the Rooker-Feldman doctrine. The Court retains the right to reconsider this issue as warranted.

The contours of Rooker-Feldman must be examined in more detail to determine if the Court has jurisdiction over Plaintiff Mitchell's claims. The Sixth Circuit has stated that Exxon Mobile clarified that Rooker-Feldman only applies to preclude subject-matter jurisdiction where the federal court issues are "inextricably intertwined" with the state court judgment such that the "claim asserts an injury whose source is the state court judgment." McCormick, 451 F.3d at 394-95. Rooker-Feldman does not act as a bar to jurisdiction where the source of the injury is the defendant's or a third party's actions independent of the state court judgment. See id. at 393. Nor does it act as a bar simply because the federal claim might ask the federal court to deny a legal conclusion reached by the state court. See id. at 394. The Sixth Circuit instructed that in such situations, there is federal court jurisdiction, but the claim may fail under state preclusion law. See id. at 393 (citing Exxon Mobile, 125 S.Ct. at 1527).

The claims presented by Plaintiff Mitchell here are analogous to those presented by the plaintiff in McCormick for purposes of the Rooker-Feldman analysis. Mitchell alleges that the source of her injuries were actions taken by the City to plan for and assure the closure of Huntington Meadows and redevelopment of the land for use other than low-income housing. Her claims implicitly may deny the legal conclusions reached by the state court that foreclosure was proper and that the land use restriction would be terminated. Federal Nat'l Mortg. Assoc., (Hamilton Cty. Ohio C.P. July 31, 2002); id. slip op. (Hamilton Cty. Ohio C.P. Apr. 4, 2003). However, that fact does not preclude this Court's jurisdiction; rather, the Court must apply Ohio

state law to determine if her claims should be precluded. McCormick, 451 F.3d at 393.

The City also moves for dismissal on the related grounds of preclusion. Generally, claim preclusion, or *res judicata*, refers to the effect of a judgment in foreclosing litigation of a claim that has not been litigated, but should have been advanced in an earlier suit, while issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided. In re Fordu, 201 F.3d 693, 703 (6th Cir. 1999) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984)). In Ohio, claims are not precluded under the doctrine of claim preclusion unless those claims were or could have been litigated in a prior action. Hapgood v. City of Warren, 127 F.3d 490, 493 (6th Cir. 1997). Under the doctrine of issue preclusion, "if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Hicks v. De La Cruz, 52 Ohio St.2d 71, 74, 369 N.E.2d 776, 777 (Ohio 1977).

Further, in Ohio, "in order for the principle of res judicata to be applicable, the parties to the subsequent action must be identical to those of the former action or be in privity with them." Johnson's Island, Inc. v. Board of Tp. Trustees of Danbury Tp., 69 Ohio St.2d 241, 244, 431 N.E. 2d 672, 674-75 (1982). Again, only Plaintiff Mitchell, among the Plaintiffs, was a party to the state court action. Contrary to Plaintiffs' arguments, the Court finds that the City of Cincinnati was a party too. Fannie Mae moved to amend their complaint and add the City, a secured creditor, as a party to the state court action. Federal Nat'l Mortg. Assoc., slip op. (Hamilton Cty. Ohio C.P. Jan. 9, 2002). The Court granted the motion to amend on February 12, 2002. Id. slip op. (Hamilton Cty. Ohio C.P. Feb. 12, 2002). Additionally, the City is listed as a

5

defendant on the Hamilton County Clerk of Court's docket sheet for the case.

Nonetheless, the Court finds that Plaintiff Mitchell's claims are not barred by issue or claim preclusion. In the following section, the Court grants the dismissal motion, in part, for mootness and failure to state a claim upon which relief can be granted. The claims that survive the dismissal motion, as discussed below, are based at least in part on events and actions that occurred separate from state foreclosure action. These claims were not fully ripened at the time that the state court terminated Plaintiff Mitchell's lease or at the time the state court ordered that the Land Use Restriction be vacated. Thus, these are not claims that were or could have been litigated.

**B.     Analysis of Individual Claims**

    1.     <u>Claims for Injunctive Relief are Moot</u>

Plaintiffs concede that their claims are moot to the extent that they sought injunctive relief. (Doc. 75 at 9.) As such, the Court will dismiss Plaintiffs' claims insofar as the Plaintiffs sought injunctive relief for the claims stated.

    2.     <u>Claim One: 42 U.S.C. § 1983 Deprivation of Constitutional Rights (Individual Plaintiffs)</u>

Individual Plaintiffs allege that the City, through a common custom, practice, or policy, deprived them of due process, just compensation under the Takings Clause, and equal protection. Preliminarily, the Court finds that Plaintiffs have sufficiently pleaded an unconstitutional policy or custom to satisfy <u>Monell v. Department of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978), for purposes of a dismissal motion.

Nonetheless, the Court will dismiss the due process and takings claims. Individual Plaintiffs assert in these claims that they were denied substantive due process in the manner in

which they were evicted from their apartments and that they were denied proper compensation for being evicted from their apartments. The due process and takings claims by their nature could only arise from events that occurred prior to and at the time of the date Individual Plaintiffs were evicted from Huntington Meadows. The state court in the foreclosure action ordered that Huntington Meadows be closed and the tenants' leases be terminated. <u>Federal Nat'l Mortg. Assoc.</u>, slip op. (Hamilton Cty., Ohio C.P. July 31, 2002). Individual Plaintiffs have not pleaded any facts that would support a finding that the City caused the PM Group, the former owner of Huntington Meadows, to default on its mortgage payment or declare bankruptcy,[1] nor that the City caused Fannie Mae to file a state foreclosure suit following the PM Group's default. The due process afforded the Individual Plaintiffs and the compensation to which they were entitled, if any, regarding the termination of their leases was determined in the state court proceeding.

Individual Plaintiffs have not pleaded facts by which the City could he held liable for the determinations made in the state court proceedings. At most, Individual Plaintiffs have alleged that a former City councilwoman anticipated the eviction order, was in favor of the evictions, and was active in the preparation of relocation packages for the residents. These facts do not support a due process or takings claim. Individual Plaintiffs have failed to state a claim upon which relief can be granted as to due process and the takings claims.

On the other hand, the Court will not dismiss the equal protection claim. The equal protection claim, interpreted broadly based on an expansive reading of the Second Amended

---

[1] More specifically, Huntington Meadows, Ltd., a PM Group subsidiary, owned the Huntington Meadows property and defaulted on the mortgage payment.

7

Complaint and Plaintiffs' briefs, is distinguishable in that it appears to be based on facts greater than the mere eviction itself. Individual Plaintiffs allege that the City took steps separate and apart from the foreclosure proceedings to ensure that the Huntington Meadows property would not continue to be used as low-income housing after the foreclosure was completed and that the City sought to have the property redeveloped into single-family housing. They further allege that the City took these actions with an intent to discriminate against and that the actions had a discriminatory impact on African-American females. The City contends that this case should be dismissed on the basis of <u>Orange Lake Associates, Inc. v. Kirkpatrick, et al.</u>, 21 F.2d 1214 (2d Cir. 1994), wherein the court denied an equal protection claim because the plaintiffs did not establish either discriminatory intent or impact. However, the <u>Kirkpatrick</u> case is distinguishable because the equal protection claim was dismissed on summary judgment, not at the Rule 12(b) stage. The Court will not dismiss the equal protection claim at this time.

    3.    <u>Claim Two: 42 U.S.C. § 1981 Tortious Interference with Private Contracts (Individual Plaintiffs)</u>

Individual Plaintiffs allege that the City impaired its right to make and enforce contracts for affordable housing and denied them the full and equal benefit of the law in entering into those contracts. They further allege that the City's actions were taken for the discriminatory purpose of relocating poor African-American females from Seymour Avenue. Section 1981 provides that all persons in the United States shall have the same right to make and enforce contracts as is enjoyed by white persons. 42 U.S.C. § 1981(a). To prove a § 1981 claim, Individual Plaintiffs must prove that (1) they belong to an identifiable class of persons who are subject to discrimination based on their race; (2) the City intended to discriminate against them the basis of race; and (3) the City's discriminatory conduct abridged a right enumerated in

8

section 1981(a).  <u>Amini v. Oberlin College</u>, 440 F.3d 350, 358 (6th Cir. 2006).

Similar to the due process and takings claims, the § 1981 claim fails to the extent it is based on a theory that the City interfered with Individual Plaintiffs' rental contracts at Huntington Meadows as it existed pre-foreclosure.  Individual Plaintiffs have not pleaded facts which would support a claim that the City was responsible for the state court-ordered termination of their rental contracts.  The parties did not specifically brief the issue of whether Individual Plaintiffs or Budget R.E. could state a § 1981 claim on the basis of the City's alleged interference with Budget R.E.'s attempt to purchase Huntington Meadows and maintain it as affordable housing.  To the extent that Individual Plaintiffs pursue a § 1981 claim based on a theory similar to the equal protection claim, the Court will not dismiss their claim at this time.

    4.    <u>Claim Three:  42 U.S.C. § 1985 Conspiracy (Individual Plaintiffs)</u>

Individual Plaintiffs allege that the City of Cincinnati conspired with various non-party entities, including the PM Group, HM Ltd., and the Winn Company, and former parties RCM Estates and ATTSD, to deny them equal protection of the laws.  They allege that the City took overt actions to encourage tenants to vacate the premises.  They further allege that the conspiracy targeted African-American females and had a disparate impact on African-American females.  To establish this claim, Individual Plaintiffs must prove:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

<u>Johnson v. Hills & Dales Gen. Hosp.</u>, 40 F.3d 837, 839 (6th Cir. 1994).  They must also prove that the conspiracy was motivated by class-based animus.

Similar to the constitutional claims and the § 1981 claim, the Court will dismiss this claim to the extent it is based on a theory that the City is somehow liable for the state court-ordered termination of their rental contracts–a theory not supported by the facts alleged–but the Court will not dismiss the claim to the extent it is based on a theory similar to that of the equal protection claim as discussed above.

5. <u>Claim Four:  Breach of Contract (Individual Plaintiffs)</u>

Individual Plaintiffs allege in this claim that the City caused a breach of the contract between Fannie Mae and the Hamilton County, a contract to which they assert they are third-party beneficiaries.  The only contract to which Individual Plaintiffs could be referring is the Land Use Restriction Agreement.  Plaintiffs fail to state a claim upon which relief can be granted here.  The Land Use Restriction Agreement was discharged pursuant to the state court foreclosure proceedings.  <u>Federal Nat'l Mortg. Assoc.</u>, slip op. (Hamilton Cty. Ohio C.P. Apr. 4, 2003).  As stated above, Individual Plaintiffs have not pleaded facts upon which the City could be held liable for the PM Group's mortgage default or bankruptcy nor for Fannie Mae's decision to foreclose upon the Huntington Meadows property.  The Court will dismiss this claim.

6. <u>Claim Five:  Abuse of Process (Individual Plaintiffs)</u>

Individual Plaintiffs allege that the City committed an abuse of process by attempting to use the legal foreclosure process and the process of seeking aid from the federal government to accomplish an improper purpose.  The elements of abuse of process are as follows:

> (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

<u>Beamer v. NETCO Inc.</u>, 411 F.Supp.2d 882, 890 (S.D. Ohio 2005).  The Ohio Supreme Court

has instructed that abuse of process occurs when "someone attempts to achieve through use of the court that which the court is itself powerless to order." Robb v. Chagrin Lagoons Yacht Club, Inc., 75 Ohio St.3d 264, 271, 662 N.E.2d 9, 14 (1996).

The Court will dismiss this claim. To the extent it is based on the use of the foreclosure process, the City was joined as a defendant in the state foreclosure proceedings. The City is not liable on the facts pleaded for Fannie Mae's utilization of the state foreclosure proceedings. As to the extent the claim is based on the City's process of seeking aid from the federal government, this Court has found only one case addressing whether the tort can occur outside the judicial context. The Miami County, Ohio Court of Common Pleas held that "the term 'legal proceeding' as used to define the tort of abuse of process is confined to those proceedings where the judicial process is involved." Kensington Land Co. v. Zelnick, 94 Ohio Misc.2d 180, 183, 704 N.E.2d 1285, 1288 (Ohio C.P. 1997). Accordingly, the City's application for aid cannot be the basis for an abuse of process claim.

       7.      <u>Claim Six: 42 U.S.C. § 3604 Fair Housing Act Violations (Individual Plaintiffs)</u>

Individual Plaintiffs allege in this claim that the City discriminated against them in the provision of housing and other services on the basis of their race and gender. The Fair Housing Act prohibits discrimination against an individual in the provision of housing on the basis of the person's race, color, religion, sex, familial status, or national origin. See 42 U.S.C. § 3604. Individual Plaintiffs do not flesh out the basis for this claim in the Amended Complaint itself. However, in their brief opposing dismissal, Plaintiffs explain that this claim is based solely on the City's actions in ensuring the closing of the Huntington Meadows property:

> The City misconstrues Plaintiffs' Fair Housing Act claims as a concern that they will be excluded from the planned redevelopment based upon their race and

>gender.  Plaintiffs make no such allegations in their second amended complaint.
>Rather, Plaintiffs challenge the City's discriminatory practices in ensuring their
>evictions so that Huntington Meadows complex could be redeveloped into a more
>desirable use.

(Doc. 45 at 11.)  Accordingly, the Court will dismiss this claim because Individual Plaintiffs have not pleaded facts which would support a finding that the City is liable for the closure of Huntington Meadows pursuant to the state court action initiated by Fannie Mae.

  8. <u>Claim Seven:  42 U.S.C. § 1981 Interference with Private Contracts (Budget R.E.)</u>

Budget R.E. alleges in this claim that the City impaired its right to make and enforce a purchase contract for Huntington Meadows for a discriminatory purpose, namely, to relocate poor African-American females from the Seymour Avenue area.  Courts have recognized that a non-minority developer may have third-party standing to assert a § 1981 claim to remedy discrimination based on the race of the persons likely to live in the proposed development.  <u>See e.g.</u>, <u>Bilello v. Kum & Go, LLC.</u>, 374 F.3d 656, 660 (8th Cir. 2004) ("Third-party standing for section 1981 claims is also permitted in cases involving discriminatory action taken directly against a non-minority person because of the person's relationship to, association with, or advocacy of minorities."); <u>Des Vergnes v. Seekonk Water Dist.</u>, 601 F.2d 9 (1st Cir. 1979) (permitting standing of developer to assert a claim to have low-income development be joined into a water district).  The Court will not dismiss this claim at this time.

  9. <u>Claim Eight:  42 U.S.C. § 1985 Conspiracy (Budget R.E.)</u>

Budget R.E. similarly alleges in this claim that the City conspired to violate civil rights. It is unclear from the First Amended Complaint whether Budget R.E. is asserting that its own rights were violated, or if it asserts third-party standing to assert that the Huntington Meadows' tenants rights were violated.  The City makes no specific arguments supporting dismissal of the

conspiracy claim as brought by Budget R.E.  The Court will not dismiss this claim at this time.

       10.       Claim Nine:  Abuse of Process (Budget R.E.)

Budget R.E. asserts an abuse of process claim on the same theories as the analogous claim asserted by Individual Plaintiffs, plus a theory that the City interfered with the prospective contract between Budget R.E. and Fannie Mae.  The Court will dismiss this claim for the same reasons it dismissed the Individual Plaintiffs' claim.

       11.       Claim Ten:  Tortious Interference with Business Relationship (Budget R.E.)

Budget R.E. alleges that the City tortiously interfered with the business relationship between it and Fannie Mae.  The City makes only two arguments for the dismissal of this claim.  The City first asserts in conclusory fashion that Budget R.E. did not state the necessary elements of the cause of action.  The Court disagrees and finds that the factual allegations stated in the First Amended Complaint are sufficient to survive the dismissal motion.

The City's second argument is that it is immune from suit regarding all of the Plaintiffs' state law claims pursuant to Ohio Revised Code §§ 2744.01(C)(2) and 2744.02.  Plaintiffs, in response, state that the City is not immune from suit on the basis of Ohio Revised Code § 2744.03.  The Court will not dismiss this claim on the basis of statutory immunity at this time.  Neither party provides any legal analysis of this issue besides the mere recitation of the statutory sections.  The Court is not obligated to wander into the oftentimes complex[2] issue of state law immunity at the dismissal stage without any meaningful guidance by the parties.

       12.       Claim Eleven: 42 U.S.C. § 3604 Fair Housing Act ("FHA") Violations (Budget

---

[2] Kammeyer v. City of Sharonville, Ohio, 1:01-CV-00649, 2006 WL 1133241, *6 (S.D. Ohio Apr. 27, 2006) (calling immunity issue "complex"); Reed v. Knox County Dept. of Human Services, 968 F.Supp. 1212, 1227 (S.D. Ohio 1997) (same).

R.E.)

Budget R.E. alleges that the City violated the FHA by refusing Budget R.E.'s offer to purchase Huntington Meadows on the basis of the race and gender of the prospective residents of the complex.  Of course, the City did not directly refuse any offer from Budget R.E. because it did not own the Huntington Meadows property.  The Court will assume, consistent with the factual allegations in the First Amended Complaint, that the basis of the claim is the City's alleged interference in Budget R.E.'s attempt to purchase the property from Fannie Mae.  The Sixth Circuit has stated that Congress intended with the FHA "to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class." Michigan Prot. and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 344 (6th Cir. 1994) (interpreting the handicap discrimination provision of the Fair Housing Act).  The Sixth Circuit held in Babin that FHA claims could be asserted against "other actors who, though not owners or agents, are in a position directly to deny a member of a protected group housing rights."  Id.  The Court, construing the allegations broadly, will not dismiss this claim at this time.

### III. CONCLUSION

For the foregoing reasons, Defendant City of Cincinnati's Motion to Dismiss Second Amended Complaint (doc. 43) is **GRANTED IN PART** and **DENIED IN PART**.  The claims are dismissed to the extent that they sought injunctive relief.  Moreover, Claim One is dismissed in part, Claim Two is dismissed in part, Claim Three is dismissed in part, Claim Four is dismissed, Claim Five is dismissed, Claim Six is dismissed, and Claim Nine is dismissed.  The remaining claims are permitted to proceed as set forth in the opinion above.

IT IS SO ORDERED.

                ___s/Susan J. Dlott_____
                Susan J. Dlott
                United States District Judge